**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCETTE GOODWIN, an individual, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>VITAMIN SHOPPE, INDUSTRIES, LLC, dba THE VITAMIN SHOPPE, a New York Limited Liability Company.<br><br>Defendant. | Case No.: 2:22-cv-04039-JFW-MAR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Joycette Goodwin ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Defendant Vitamin Shoppe Industries, LLC dba The Vitamin Shoppe ("Vitamin Shoppe" or "Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I.    **INTRODUCTION**

1.    Defendant markets "The Vitamin Shoppe Garcinia Cambogia Extract" ("Garcinia Cambogia" or the "Product"), a dietary supplement that Defendant falsely claims is an effective aid in "weight management" and "appetite control," despite the fact that the Product's only purportedly active ingredients, Hydroxycitric Acid ("HCA") and Chromium Nicotinate Glycinate Chelate ("Chromium"), are scientifically proven to be incapable of providing such weight-loss benefits.

2.    Plaintiff read and relied upon Defendant's claims when purchasing the Product and was damaged as a result.

3.    Plaintiff brings this action challenging Defendant's misleading weight management and appetite control claims relating to the Product on behalf of herself and all other similarly situated consumers in California, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, *id*. §§ 17500 *et seq*. ("FAL"). Plaintiff brings further causes of action for breach of express and implied warranties and negligent misrepresentation.

4.    Plaintiff seeks an order compelling Defendant to (a) cease marketing the Product using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law.

2

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

6.    The court has personal jurisdiction over Defendant because Defendant has purposely availed itself of the benefits and privileges of conducting business activities within California, and consented to personal jurisdiction by registering to do business in California.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff purchased the Product in this District, Vitamin Shoppe is authorized to conduct business in this District, and Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Product in this District, and is subject to personal jurisdiction in this District.

## III.    PARTIES

8.    Defendant Vitamin Shoppe Industries, LLC, dba The Vitamin Shoppe, is a New York limited liability company with its principal place of business in Secaucus, New Jersey. Defendant is registered to do business in California as entity number 202015010479. Defendant develops, manufactures, promotes, markets, distributes, and/or sells the Product to hundreds of consumers in California.

9.    Plaintiff Joycette Goodwin ("Plaintiff") is a resident of Los Angeles County, California, and purchased the Product several times for personal and household use and not for resale at a Vitamin Shoppe store located on 1800-G Rosecrans Avenue, Manhattan Beach, California 90266, with her most recent purchase around April or May 2022. Plaintiff paid approximately $20.00 for the Product that she purchased. Plaintiff saw the misrepresentations made on the Product

3

label prior to and at the time of purchase and understood them as representations and warranties that the Product was safe and effective for appetite control and weight management as advertised.    Plaintiff relied on the representations made on the Product's label in deciding to purchase the Product. These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Product had she known the representations were false. Plaintiff would consider purchasing the Product again if the advertising statements made on the Product labels were, in fact, truthful and represented in a manner as not to deceive consumers.

## IV.    <u>NATURE OF THE ACTION</u>

10.    On June 17, 2014, the United States Senate Subcommittee on Consumer Protection, Product Safety, and Insurance held a hearing titled *Protecting Consumers from False and Deceptive Advertising of Weight-Loss Supplement Products*.[1] In her opening statement, committee chairwoman— Former Senator Claire McCaskill— stated that "With so many Americans desperate for anything that might make it easier to lose weight, it's no wonder scam artists and fraudsters have turned to the $60-billion weight-loss market to make a quick buck."

11.    False advertising of weight-loss products is truly an epidemic. Government regulators are overwhelmed because "One out of ten fraud claims submitted to the FTC are, in fact, for weight-loss products." Indeed, Senator McCaskill stated that "the problem is much larger than any enforcement agency could possibly tackle on its own. Private stakeholders, companies that sell weight-loss products, media outlets, and other advertising platforms, *as well as consumer watchdogs*, must all do their part to help address this problem."

## A.    Defendant's Sale and Marketing of the Product

12.    Plaintiff and the proposed Class members are all purchasers of Vitamin

---

[1] Official transcript of *Protecting Consumers From False and Deceptive Advertising of Weight-Loss Products, Before the Subcommittee on Consumer Protection, Product Safety and Insurance of the United States Senate*, 113TH CONG. 2ND. SESS. (June 14, 2016), *available at* https://www.gpo.gov/fdsys/pkg/CHRG-113shrg92998/pdf/CHRG-113shrg92998.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

Shoppe's brand weight-loss supplement "Garcinia Cambogia Extract" product (the "Product") that contains Garcinia Cambogia extract, standardized to Total Hydroxycitric Acid (HCA).

13. Defendant has distributed, marketed, and sold the Product throughout California, for at least the past several years.

14. The Product is sold online and at Defendant's brick-and-mortar stores, The Vitamin Shoppe, and sells at a retail price of approximately $20.00 - $30.00.

15. The Product comes in capsules form and are sold in various quantities, including bottles of 90 and 180 capsules.

16. Defendant markets and advertises the Product as an effective weight management and appetite control supplement through claims placed directly on the Product's bottle despite that it provides no such benefits.

17. For purposes of this section, each statement that appears in quotation marks ("") below create affirmative representations about the Product and also create express and implied warranties that were relied on by Plaintiff and the Class members in deciding to purchase the Product.

18. These statements will from now on be referred to in this Complaint as the "Express Warranties" and they also form the basis of Plaintiff's consumer fraud and misrepresentation causes of action.

19. Below are true and correct copies of the Product's front, back, and side labels:

///

///

///

///

///

///

///

5

FIRST AMENDED CLASS ACTION COMPLAINT



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





FIRST AMENDED CLASS ACTION COMPLAINT

20. The front label of the Product states that it is "garcinia cambogia extract," with claimed purposes of "weight management*" and "appetite control*."

21. The left-side label of the Product states "quality promise tested & trusted."

22. The back "Supplement Facts" label states "Garcinia Cambogia Extract is standardized to 60% Hydroxycitric Acid (HCA)" as the active ingredient.

23. The back "Supplement Facts" label also lists "Chromium (as chromium nicotinate glycinate chelate)" as an active ingredient.

24. The above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, the above-quoted statements create express or implied warranties and Defendant has breached said warranties for the reasons described herein.

25. Defendant's misleading "appetite control" and "weight management" claims convey that the Product is capable of helping consumers lose weight and will actually help consumers lose weight, by suppressing appetite. However, these claims, taken individually and especially in context of the label as a whole, are misleading because the Product's only "active" ingredients are incapable of providing any weight-loss benefits.

26. In short, the claims on the packaging of the Product convey the concrete overall message that the Product by means of its HCA, can effectively help consumers lose weight. Defendant intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

**B.    Scientific Studies Demonstrate that the Product's Active Ingredients Do Not Provide the Advertised Benefits**

27. Numerous randomized, placebo controlled scientific studies demonstrate that Garcinia Cambogia extract and/or HCA does not provide weight management or appetite control benefits in humans. In fact, the only reliable scientific evidence demonstrates it is no more effective as a weight-management aid

FIRST AMENDED CLASS ACTION COMPLAINT

than a placebo.

28.    A significant *Garcinia*/HCA weight loss study was published in 1998 by a group of researchers at Columbia University's Obesity Research Center that was led by Dr. Heymsfield and published in the *Journal of the American Medical Association*.[2]  This study was, and remains, one of the longest duration (12 weeks) and largest (135 subjects divided equally into placebo and control groups) randomized double-blind clinical trials of *Garcinia cambogia.*

29.    The study found that a *Garcinia* extract failed to produce a significant loss of weight and fat mass beyond that observed with placebo.[3]

30.    *The Hemsfield* study has stood the test of time. In 2011, it was one of only 12 clinical trials deemed worthy of inclusion in a landmark meta-analyses of supplements like *Garcinia cambogia* and is assigned the highest Jadad score[4] of all included studies.[5,6]

31.    In 2001, a study published in the Journal of Physiology and Behavior

---

[2] S.B. Heymsfield, *et al.,* "Garcinia Cambogia (Hydroxycitric Acid) As a Potential Antiobesity Agent: A Randomized Controlled Trial," *J. Amer. Med. Assoc.* 280(18):1596-600 (1998).  *Full text available at* http://jama.jamanetwork.com/article.aspx?articleid=188147.  (Accessed October 14, 2015).

[3] In fact, the data suggests that the placebo group, on average, consistently lost <u>more</u> weight than the *Garcinia* treatment group across the entire time course of the study.

[4]  "Jadad score" is a benchmark measuring the likelihood of bias in clinical trials, with higher numbers indicating lower likelihoods of bias.  For a meta-analysis, Jadad scoring is carried out by a panel of scientists who are themselves blinded as to the authorship of articles.

[5] *See* Table 1 *in* I. Onakpoya, *et al.,* "*The Use of Garcinia Extract (Hydroxycitric Acid) as a Weight Loss Supplement: A Systematic Review and Meta-Analysis of Randomised Clinical Trials,"* J. Obesity (2011), http://www.hindawi.com/journals/jobe/2011/509038/.

[6] Heymsfield recently defended his results and stated that marketers of *Garcinia cambogia* are "weaving a story with obscure facts.  Maybe each fragment has some validity, but if you wind it together it makes no sense at all."  *See* "*The Claims Make this Supplement Tempting, But They're Untrue,"* Consumer Reports (Aug. 10, 2015)

10

found that HCA was no more effective than a placebo in supporting appetite control.[7]

32.    The authors "hypothesized that HCA supplementation might affect BW [body weight] regulation by inducing satiety and reducing food intake," (*id*. at 544) but found to the contrary that "supplementation with HCA . . . did not result in increased satiety or decreased energy intake compared to placebo." *Id*. at 543.

33.    To determine whether HCA supported appetite control, the study measured participants hunger, appetite, anticipated food intake, desire to eat, fullness, satiety, and thirst. There was no statistically significant difference between HCA and a placebo on any of these appetite variables. *Id*. at 546. Thus, the study "showed that HCA . . . [was] not effective with respect to satiety and energy intake . . ." *Id*. at 548.

34.    In 2001, a related study published in the International Journal of Obesity found that "[t]wo-week supplementation with HCA . . . did not result in increased satiety, fat oxidation, 24 h EE [energy expenditure] or BW [body weight] loss."[8]

35.    The study employed a "double-blind, placebo-controlled, randomized, crossover design" and specifically examined the effects of HCA alone and HCA in combination medium-chain triglycerides on "satiety, fat oxidation, energy expenditure and body weight." *Id*. at 1088. As "[i]n [their] previous study," which found "no effect of HCA on satiety," this study found that HCA "did not result in increased satiety, fat oxidation, 24 h EE [energy expenditure] or BW [body weight] loss compared to PLA[CEBO]." *Id*. Thus, "[t]he results did not support the hypothesis that HCA supplementation may be effective on appetite and weight

---

[7] E. Kovacs et al., *Effects of 2-week ingestion of (-)-hydroxycitrate and (-)-hydroxycitrate combined with medium-chain triglycerides on satiety and food intake*, 74 Physiology & Behavior 543 (2001).

[8] E. Kovacs et al., *The effects of 2-week ingestion of (--)-hydroxycitrate and (--)- hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight*, 25 Int. J. Obes. 1087, 1088 (2001).

FIRST AMENDED CLASS ACTION COMPLAINT

control." *Id*. at 1087.

36.    In 2004, Max Pittler and Edzard Ernst, complementary medicine researchers at the universities of Exeter and Plymouth, published a systematic review of prior meta-analyses[9] and clinical trials of a variety of over-the-counter weight loss aids in *The American Journal of Clinical Nutrition*.  The results indicated that none of the weight loss aids worked, including the *Garcinia cambogia* products reviewed. Moreover, adverse events were reported in the *Garcinia* trials reviewed.  The report concluded that "none of the reviewed dietary supplements," which included Garcinia cambogia, "can be recommended for over-the-counter use."[10]

37.    Since hydroxycitric acid reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of hydroxycitric acid on appetitive variables. The active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change. This study does not support a satiety effect of hydroxycitric acid.[11]

38.    A study was conducted to assess the effects of acute hydroxycitric acid supplementation on substrate metabolism at rest and during exercise in humans. Hydroxycitric acid, even when provided in large quantities, does not increase total fat oxidation in vivo in endurance-trained humans.[12]

---

[9] A meta-analysis contrasts and combines results from different studies in an attempt to identify patterns among study results, sources of disagreement, and other relationships between the studies.

[10] M.H. Pittler & E. Ernst, "*Dietary Supplements for Body-Weight Reduction: A Systematic Review*," AMER. J. OF CLIN. NUTR. (May 2004).

[11] Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. *Physiol Behav* 2000, 71:87-94.

[12] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)- hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

39.    Meta-analyses of research on *Garcinia cambogia* and/or HCA have evaluated all known published credible human scientific studies. The meta-analyses uniformly conclude that HCA-containing supplements, such as the Product at issue, have little or no positive effect on weight loss in healthy individuals.

40.    The results of more recent studies have been the same: "Garcinia cambogia extract did not show dietary efficacy."[13]

41.    A 2008 study published in the *Journal of Clinical Biochemistry and Nutrition*, found that "hydroxycitric acid had no significant effect on the body component" and that "dietary efficacy was not indicated." *Id*. at 100.

42.    That study, which employed a "double-blind, non-cross-matching test," found that "Garcinia cambogia extract did not show dietary efficacy." *Id*. at 90, 101.

43.    A 2011 study publish in the prominent *Nutrition Journal* found that Garcinia Cambogia extract supplementation "failed to promote weight-loss or any clinically significant change in % body fat."[14]

44.    The researchers noted that "the evidence for the effectiveness of natural food supplements to promote weight-loss and improve health is largely derived from animal studies. Therefore, it is essential randomized double-blind placebo-controlled trials (RCTs) are conducted to determine the effectiveness of natural food supplements to promote weight-loss." *Id*. at 94-95.

45.    The randomized double-blind placebo-controlled trial found that "GCE supplementation [garcinia cambogia extract] was not effective in promoting weight-loss in overweight individuals." *Id*. at 101.

41.    Further, "[i]n agreement with past studies the present study provided

---

[13] Yoshikazu Yonei et. al, *Effects on the Human Body of a Dietary Supplement Containing L-Camitine and Garcinia Cambogia Extract: A Study using Double-blind Tests,* 42 J. Clin. Biochem. Nutr. 89, 101 (2008).

[14] Kim et al., *Does Glycine max leaves or Garcinia Cambogia promote weight-loss or lower plasma cholesterol in overweight individuals: a randomized control trial,* 10 Nutr. J. 94, 94 (2011).

FIRST AMENDED CLASS ACTION COMPLAINT

no evidence that GCE supplementation [garcinia cambogia extract] can modify calorie intake in overweight individuals consuming their habitual diet." *Id*. at 102.

42.    These studies, all of which were controlled human trials, affirmatively demonstrate that Garcinia Cambogia extract (HCA) does not and cannot aid weight management or appetite control.

43.    Indeed, the Food and Drug Administration's (FDA) Office of Dietary Supplements concludes that based on research findings, that "Garcinia cambogia has little to no effect on weight loss."[15]

44.    Chromium Nicotinate Glycinate Chelate ("Chromium") is also ineffective for assisting with weight loss and appetite control. The Federal Trade Commission ("FTC")[16] and numerous scientific studies have concluded that there is insufficient scientific evidence to support claims that Chromium is "a supplement that causes long-term weight loss, reduces body fat, builds muscle, increases metabolic rate, controls appetite, reduces serum cholesterol, regulates blood sugar levels, increases energy, [or] treats and prevents diabetes."[17]

45.    A 1997 randomized, double-blind placebo-controlled study concluded that a group of participants treated with Chromium actually gained weight compared to a group of participants who engaged in exercise.[18]

46.    A 1995 double-blind placebo-controlled study concluded that there were no significant differences between changes in body composition between a

---

[15] *See* Dietary Supplements for Weight Loss, *available at* https://ods.od.nih.gov/factsheets/WeightLoss-Consumer/

[16] See *Charges Over Weight-Loss Products Settled,* Los Angeles Times (Nov. 8, 1996), available at https://www.latimes.com/archives/la-xpm-1996-11-08-fi-62432-story.html.

[17] *See* Allison et al., *Alternative Treatments for Weight Loss: A Critical Review*, 41 Critical Revs. in Food Sci. & Nutr.: Agric. & Env't Sci. Collection 1, 7 (2001).

[18] Grant, K.E., Chandler, R.M., Castle, A.L, and Ivy, J.L., Chromium and exercise training; effect on obese women. *Med Sci. Sports Exerc.*, 1997.

First Amended Class Action Complaint

group treated with Chromium and a group treated with placebo.[19]

47.    A 1992 randomized, double-blind placebo-controlled study similarly conclusion that there were no significant differences on body composition between a group treated with chromium and a group treated with a placebo.[20]

**C.    The Labeling of the Product Violates California and Federal Statutes and Regulations**

   **i.    *Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law***

48.    Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code§§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food and dietary supplement labeling requirements as its own. *See id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto."); *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.").

49.    For the purposes of labeling, "a dietary supplement shall be deemed to be a food." *See* 21 U.S.C. § 321(ff).

50.    The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

51.    Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations, the

---

[19] Trent, L.K. and Theiding-Cancel, D. Effects of chromium picolinate on body composition. *J. Sports Med. Phy. Fitness*, 1995.

[20] Hasten, D.L, Rome E.P., Franks B.D., and Hegsted, M. Effects of chromium picolinate on beginning weight training students. *Int. J. Sports Nutri.* 1992.

FIRST AMENDED CLASS ACTION COMPLAINT

Sherman law is explicitly authorized by the FDCA.

        *ii.*     ***The Product's False and Misleading Labeling Claims Render it Misbranded Under California and Federal Law***

    52.    Defendant's deceptive statements described herein violate Cal. Health & Safety Code §§ 110390 and 110660, and 21 U.S.C. § 343(a), which deem a food or dietary supplement misbranded if its labeling is "false or misleading in any particular."

    53.    Further, Defendant's labeling of the Product is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R. §1.21. For example, in light of the Product's weight management and appetite control claims, the labeling fails to reveal the fact that numerous randomized, controlled human trials demonstrate that Garcinia Cambogia and Chromium are not effective or capable of aiding in weight management and appetite control.

    54.    The Product is further misbranded because its labeling and packaging bear structure function claims even though the Product does not meet the requirements to make such claims.

    55.    Specifically, the statements "weight management" and "appetite control" are structure function claims.

    56.    These claims violate 21 U.S.C. 343(r)(6) because the weight of scientific evidence does not support these claims as being "truthful and not misleading" as required. *See* 21 U.S.C. 343(r)(6). To the contrary, scientific evidence, as alleged herein, affirmatively demonstrates that the Product's purportedly "active" ingredients are incapable of providing any dietary benefits.

**D.    Plaintiff's Purchases, Reliance, and Injury**

    57.    During the class period, Plaintiff purchased Vitamin Shoppe Garcinia Cambogia Extract in reliance on the Product's misleading dietary claims from a Vitamin Shoppe store in Manhattan Beach, California. The cost of the Product was

16

approximately $20.

58.    When deciding to purchase the Product, Plaintiff read and relied on the claims that Garcinia Cambogia is a way to support "weight management" and that the Product supports "appetite control," which appear directly on the Product's label and packaging.

59.    Based on these representations, Plaintiff believed the Product was an effective dietary aid that would provide weight management and appetite control benefits, and would help her lose weight and help control her appetite.

60.    When purchasing the Product, Plaintiff was seeking a product that had the qualities described on the Product's label, namely, an effective supplement that aids in weight loss, weight management, and appetite control.

61.    Plaintiff read and relied upon Defendant's claims when purchasing the Product.

62.    After using the Product, Plaintiff did not experience the benefits promised by the Product labels.

63.    The representations on the Product's label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Product cannot deliver the purported benefits and is no more effective than a placebo.

64.    Plaintiff acted reasonably in relying on the challenged claims that Defendant intentionally placed on the Product's label and packaging with the intent to induce average consumers into purchasing it.

65.    Plaintiff first discovered Defendant's unlawful acts described herein in June 2022, when she learned that Defendant's Product violates the FDCA and its implementing regulations and that the labels were untrue and/or misleading.

66.    Instead of receiving a product that had actual beneficial weight management and appetite control properties, the Product that Plaintiff and the Class

received was one that does not and cannot deliver the claimed benefits.

67.     Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to her, throughout the Class Period defined herein.

68.     The Product, which has the sole intended purpose as a dietary aid, is worthless since it is incapable of providing any such benefits.

69.     The Product costs more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

70.     Plaintiff paid for the Product, and would have been unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

71.     For these reasons, the Product was worth less than what Plaintiff paid for it.

72.     Plaintiff would not have purchased the Product if she knew it was misbranded pursuant to FDA regulations and could not be legally sold or held and thus is legally worthless.

73.     Plaintiff would like to, and would consider, purchasing the Product again when she can do so with the assurance that the Product's label, which indicates that the Product aids in weight management and appetite control, is truthful and consistent with the Product's active ingredients.

74.     Plaintiff will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the product again unless she can do so with the assurance that the Product's label, which indicates that the Product aids in weight management and appetite control, is truthful and consistent with the Product's active ingredients.

75.     Plaintiff lost money as a result of Defendant's deceptive claims and practices in that she did not receive what she paid for when purchasing the Product.

76.    Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the Product.

77.    The senior officers and directors of Defendant allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## V.    CLASS ACTION ALLEGATIONS

78.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Class, for the time period from June 13, 2018 until the date notice is disseminated to the class ("Class Period"), as defined as follows:

**The California Class is defined as follows**:

All California citizens who purchased the Product in California for personal and household use and not for resale during the Class Period.

79.    The proposed members of the Class will be referred to as "Class Members."

80.    Plaintiff and the Class reserve their right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

81.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

82.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the hundreds and members of the Class are numerous.  While the exact number

FIRST AMENDED CLASS ACTION COMPLAINT

and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

83.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Product appropriate with respect to the Class as a whole.  In particular, Defendant has failed to disclose the true nature of the Product being marketed as described herein.

84.     There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following:

    a.  Whether Defendant breached any express warranties made to Plaintiff and the Class;

    b.  Whether Defendant breached any implied warranties made to Plaintiff and the Class;

    c.  Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Product;

    d.  Whether Defendant violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;

    e.  Whether Defendant's conduct violates public policy; whether Defendant's conduct violates state and federal food statutes or regulations; whether the Product is misbranded;

    f.  The proper amount of restitution, damages, and punitive damages;

    g.  The proper injunctive relief, including a corrective advertising campaign; and

    h.  The proper amount of attorneys' fees.

FIRST AMENDED CLASS ACTION COMPLAINT

85.     These common questions of law and fact predominate over questions that affect only individual Class Members.

86.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product, and suffered economic injury because the Product was and still is misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Product, Plaintiff and Class Members would not have purchased the Product.

87.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims specifically, including for dietary supplements.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

88.     Plaintiff and the members of the Class suffered, and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the

FIRST AMENDED CLASS ACTION COMPLAINT

judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

89.    Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

90.    Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

91.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

92.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

93.    California's Unfair Competition Law, Business and Professions Code §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continues to engage in such business conduct, in violation of the UCL.

94.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

**Fraudulent**

95.    A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

96.    As set forth herein, Defendant's claims relating to the Product are likely to mislead reasonable consumers to believe the Product can provide weight management, appetite control, and weight-loss benefits, when it cannot.

97.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct.  Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to public injunctive relief against Defendant, as set forth in the Prayer for Relief.

98.    Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

99.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products the Class Members purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

**Unlawful**

100.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

        a.    By knowingly and intentionally concealing from Plaintiff and the other Class members that the Product cannot provide the advertised weight management, appetite control, or weight-loss benefits while obtaining money from Plaintiff and the Class;

        b.    By misrepresenting the nature of the Product and the Product's

effectiveness at providing the weight management, appetite control, and weight-loss benefits;

c.    By engaging in the conduct giving rise to the claims asserted in this complaint;

d.    By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Product;

e.    By violating California Civil Code §§ 1709-1711 by suppressing material information about the Product;

f.    By violating the California Commercial Code for breaches of express and implied warranties.

g.    By violating Cal. Bus. & Prof. Code § 12606.2 and 21 C.F.R. § 100.100;

h.    By violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

i.    By violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

j.    By violating the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

k.    By violating the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

101.    Such conduct is ongoing and continues to this date.

102.    Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

## **Unfair**

103.    Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and

24

unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace. Such conduct is ongoing and continues to date.

104. Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

105. Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

106. Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

107. Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Product's packaging. Thus, public injunctive relief enjoining Defendant's deceptive practices is proper.

108. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq*.

109. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

25

110.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

111.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

112.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Product misled consumers acting reasonably as to the effectiveness and weight management, appetite control, and weight-loss properties of the Product.

113.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Product in reliance on Defendant's false and misleading labeling claims that the Product, among other things, aids in weight management and provides appetite control.

114.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

115.    Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

116.    As a result, Plaintiff, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

117.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq*.

118.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

119.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

120.   Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

    a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

    c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

    d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

121.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

122.   Defendant's wrongful business practices constituted, and constitute, a

continuing course of conduct in violation of the CLRA.

123.   On or about June 10, 2022, Plaintiff sent a CLRA notice letter to Defendant which complies with California Civil Code 1782(a). Plaintiff sent Vitamin Shoppe Industries, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A copy of Plaintiff's CLRA letter is attached hereto as **Exhibit 1**. As of the date of this filing, Defendant has failed to take corrective action.

124.   Wherefore, Plaintiff seeks public injunctive relief, actual damages, restitution, and attorneys' fees and costs for Defendant's violations of the CLRA.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranties,
### Cal. Com. Code § 2313(1)

125.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

126.   Through the Product's label and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

127.   The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned alleged efficacy of the Product regarding the ability to aid with weight management and appetite control.

128.   These representations had an influence on consumers' decisions in purchasing the Product.

129.   Defendant made the above representations to induce Plaintiff and the members of Class to purchase the Product. Plaintiff and the Class members relied

28

on the representations when purchasing Defendant's product.

130.    Defendant breached the express warranties by selling a Product that does not and cannot provide the promised benefits.

131.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Product.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranties,

### Cal. Com. Code § 2314

132.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

133.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class that, among other things, the Product would aid in weight management and appetite control.

134.    Plaintiff and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

135.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

136.    However, Defendant breached that implied warranty in that the Product does not aid in weight management and appetite control.

137.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that it did not conform to promises and affirmations made on the container or label of the goods nor is it fit for its ordinary purpose, aiding in weight management and appetite control.

138.    Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase price.

## SIXTH CAUSE OF ACTION

### Claim for Negligent Misrepresentation

139.    Plaintiff and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

140.    Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Product because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

141.    During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including the alleged weight management, appetite control, and weight-loss benefits.

142.    Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Product.

143.    Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would not realize the alleged benefits represented by Defendant.

144.    Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

145.    Plaintiff and the Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known.

### VI.    PRAYER FOR RELIEF

146.    Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, including:

30

a.   An order certifying this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3);

b.   An order maintaining this action as a class action and/or an order maintaining a particular issue class action pursuant to Federal Rule of Civil Procedure 23(c)(4);

c.   An order requiring Defendant to bear the costs of class notice;

d.   An order appointing Plaintiff as the class representative and the Law Offices of Ronald A. Marron as Class Counsel;

e.   An order compelling Defendant to conduct a corrective advertising campaign;

f.   An order compelling Defendant to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

g.   An order awarding disgorgement of Defendant's profits that were obtained from its ill-gotten gains in connection with its sales of the Product to Plaintiff and the class members;

h.   An order awarding restitution in the amount of the purchase price paid by the class members for the Product;

i.   An award for punitive damages;

j.   An award of attorneys' fees and costs; and

k.   An order providing for all other such further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 22, 2022          Respectfully Submitted,

/s/ *Ronald A. Marron*
Ronald A. Marron

31

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN
*mike@consumersadvocates.com*
LILACH HALPERIN
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Counsel for Plaintiff and the Proposed Class***

FIRST AMENDED CLASS ACTION COMPLAINT